(70 App. Div. 192.)

### KALISH et al. v. HIGGINS et al.

(Supreme Court, Appellate Division, First Department.  March 21, 1902.)

1. FRAUDULENT CONVEYANCES — VOLUNTARY CONVEYANCE — CONVEYANCE TO WIFE—EVIDENCE—SUFFICIENCY.

A husband conveyed real estate to his wife, without consideration, at a time when he was not indebted, and when his only liability was as guarantor of the payment of rent under a term lease by a third person to plaintiff.  At the time of the conveyance, which was prepared by plaintiff's attorney, there was no rent in arrears, and all rent subsequently accruing was paid for nearly two years thereafter, and the parties to the conveyance did not contemplate that the lessee would not pay the rent when due.  The husband stated, on signing the guaranty, that he was the owner of the real estate, but no lien was given thereon. The husband continued in business after the conveyance, paid his bills, and maintained a bank deposit, which at times was much larger than the amount the lessee failed to pay.  *Held*, that the evidence was not sufficient to show a fraudulent intent of the parties to the conveyance, and that it was not invalid as being in fraud of creditors.

2. SAME—FRAUDULENT INTENT—BURDEN OF PROOF.

The mere proof of a voluntary conveyance by a husband to his wife is not sufficient, in a suit to set the conveyance aside as being in fraud of creditors, to impose the burden on defendant of showing that there was no fraudulent intent.

3. SAME—EVIDENCE—DECLARATIONS OF GRANTOR—ADMISSIBILITY.

Declarations by the grantor of real estate, after the conveyance, are not admissible against his grantee in a suit to set the conveyance aside as being in fraud of creditors.

4. SAME.

The fact that, in a suit to set aside a fraudulent conveyance, the testimony of one of the defendants, who was a party to the conveyance, tending to show that it was without fraudulent intent, is not believable, is not a circumstance from which such intent can be found.

Appeal from special term.

Suit by Johanna Kalish and others, as executrices and executors of the last will and testament of Joseph Kalish, deceased, against Luke Higgins and another, to set aside a fraudulent conveyance.  From a judgment in favor of the plaintiffs, the defendants appeal.  Reversed.

Argued before VAN BRUNT, P. J., and HATCH, INGRAHAM, McLAUGHLIN, and LAUGHLIN, JJ.

M. J. Horan, for appellants.
Edward W. S. Johnson, for respondents.

INGRAHAM, J.  The plaintiffs, as judgment creditors of the defendant Luke Higgins, seek to set aside a deed made by Higgins conveying certain real estate to his wife, Elizabeth Higgins, for a nominal consideration.  The complaint alleges the conveyance of the property sought to be reached in this action on the 5th day of August, 1896, and the recovery of judgment against the defendants on the 18th day of October, 1898; that on the 19th day of February, 1892, and the 14th day of June, 1894, when the instruments upon which the judgment

against the defendant Luke Higgins was obtained were executed, Higgins represented to the plaintiffs' testator that he was the owner and seised in fee of the premises described, and that the said plaintiffs' testator accepted the obligation of the defendant as surety, relying upon the said representations and statements; that the conveyance by the defendant Luke Higgins to his wife was made for the purpose of preventing judgments against Higgins from becoming a lien on said premises, and were made solely for the purpose of hindering, delaying, and defrauding the plaintiffs' testator and other creditors of the defendant Luke Higgins; that the defendant Luke Higgins is wholly insolvent, and has no other property or assets out of which said judgment or any part thereof can be collected; and that unless the court grants the relief sought in this action the plaintiffs will be remediless. There is no allegation in the complaint that at the time of this conveyance of the property the judgment debtor was not solvent, or that he did not retain property sufficient to pay all his debts.

The court in its decision—which was a short decision, under section 1022 of the Code—found that "at that time [time of conveyance] he [defendant Luke Higgins] did not have left enough property to meet his said obligations under his contract of guaranty." There was no allegation in the complaint of this fact, and not only is there no evidence to sustain this finding, but it is disproved by the undisputed testimony. The decision further contains a statement that "the court decides that the aforesaid conveyances were made by defendant Luke Higgins, with the intent to hinder, delay, and defraud the plaintiffs' testator and plaintiffs, within the meaning of said statute." We think that the testimony did not justify this finding, and that there was no evidence to show that this defendant was at the time of making this conveyance insolvent. In the opinion of the court below, the decision was based upon the case of Bank v. Fonda, 18 Misc. Rep. 114, 41 N. Y. Supp. 112; but in that case it appeared that the conveyance sought to be impeached was voluntary, and included all of the debtor's property, so that there was not enough left to pay his debts, the court in that case saying:

"The conveyance in question, being voluntary, without consideration, and covering substantially all of the property of the judgment debtor, so that there is nothing left out of which the plaintiff can collect its judgment, is presumptively fraudulent, for the plaintiff at the time the conveyance was made was a creditor."

This certainly was not an authority for a case in which not only that crucial fact was proved, but where the uncontradicted evidence showed that at the time of the conveyance sought to be impeached the judgment debtor retained property much in excess of his actual indebtedness, and much in excess of the claim which subsequently he became bound to pay.

The facts surrounding this transaction show that at the time this conveyance was made neither the judgment debtor nor the grantee had an intention to defraud any one. The plaintiffs' testator, being the owner of a piece of real estate, leased it on February 19, 1892, to one Manning for a term of five years, from May 1, 1892, to May 1, 1897, at an annual rental of $1,560, payable monthly in advance, and the

defendant Luke Higgins guarantied the payment of that rent. This lease contained a covenant against the assignment of the lease. On the 21st day of June, 1894, the tenant, wishing to transfer the lease, applied to the plaintiffs' testator for permission to make such transfer; whereupon the landlord consented to an assignment of the lease from Manning to one Reilly, and at the same time covenanted to give a further term of two years, to commence on the 1st of May, 1897, upon the same terms and conditions as the existing lease, either to Manning or to Reilly; and at that time the defendant Higgins executed an agreement whereby he agreed to remain liable on said lease, regardless of such assignment, for any default made by either Manning or Reilly during the remainder of the term, and further agreed that, if default should be made by Manning or Reilly in the payment of the rent, and the performance of the covenants contained within the lease or the renewal thereof, which the plaintiffs' testator had that day covenanted to and with said Manning and said Reilly to grant at the expiration of the time of the within lease, he would pay the rent mentioned in said lease or renewal, or any arrears thereof that might remain due to the plaintiffs' testator. This instrument was executed on the 14th day of June, 1894. At that time Higgins was again asked whether he was the owner of the property the conveyance of which is sought to be set aside in this action, and he stated that he was. But there was no agreement or covenant or undertaking that he would remain the owner of the premises, or that the premises should be subject to any lien for the performance of this agreement. It appears that all of the rent under the original lease was paid, and that neither the lessors nor Higgins made any default in the payment of such rent. Higgins, being engaged as a saloon keeper in the city of New York, became ill, and in August, 1896, desired to convey the premises in question to his wife. He went to the office of Messrs. Johnston & Johnston, who were the attorneys for the plaintiffs' testator, and had prepared the lease from Manning, the consent for the assignment of the lease from Manning to Reilly, and the instrument by which the defendant guarantied the payment of the rent, and requested them to draw up the papers for a transfer of this property from himself to his wife. The deeds making these transfers were drawn up in the office of Johnston & Johnston, and recorded by them. This conveyance was therefore made under the direction of the attorneys for the lessor, in whose presence Higgins had stated that he was the owner of the property, and at the time these conveyances were made there was no rent due under this lease to the plaintiffs' testator, and none became due which was not paid by the tenant for several years thereafter.

There is no evidence that at the time this conveyance was made Higgins was indebted to any person in any sum of money. Higgins was called as a witness, and testified that at the time he did not owe anybody one cent. There was a contingent liability to the plaintiffs' testator under this guaranty for the rent, but no rent was then due and unpaid, and there is no evidence that either of the parties to this action contemplated that there ever would be any rent due or unpaid, or that this conveyance had any relation to any liability under that guaranty. Both the defendant and his wife positively swear that they had no

suspicion that any liability would subsequently arise because of this guaranty, and there is no evidence to contradict that statement. It is corroborated by the fact that the defendant went to the attorneys for the lessor to have drawn up the conveyance to effect the transfer. Nor at this time had either Reilly or Manning accepted the renewal of the lease, or agreed to accept such a renewal. After these transfers were made and duly recorded, Higgins continued in business, being apparently prosperous. He had an account in the Greenwich Bank, and that account continued until after May 3, 1898, the balance upon the date of this conveyance being more than $100, afterwards increasing, so that at one time he had over $3,500 on deposit in the bank; and from January 12, 1897, to March 24, 1898, he apparently had in this bank at all times a sum of money in excess of that required to pay the amount unpaid for the rent upon this lease, the payment of which he had guarantied. In addition to this, Higgins continued to conduct his business, giving orders for supplies, and promptly paid his bills. In November, 1897, he sold out this business, and received the consideration therefor. On the 15th day of April, 1897, Reilly, the person to whom the lease made to the plaintiffs' testator had been assigned, served a notice upon the plaintiffs' testator that he elected to take a renewal of the lease for two years, to commence May 1, 1897, and subsequent to that a renewal lease was executed between Reilly and the plaintiffs' testator, but there is no evidence that the defendants had notice of those facts. Reilly continued in these premises under this renewal lease, and during the time he occupied the premises he paid all the rent that accrued. Before the expiration of the two years, however, he left the premises, leaving unpaid the sum of $86 as rent of the premises for the month of June, 1898, and the sum of $130, the rent of the said premises due on the 1st day of July, 1898, making a total of $216, and for that sum the plaintiffs' testator obtained a judgment against Higgins, which judgment was entered on October 18, 1898; and it is to enforce payment of this indebtedness, accrued nearly two years after the transfer of the property upon a lease executed nearly a year after the transfer of the property,—it being the only unpaid obligation of the defendant, either actual or contingent, at the time he made the transfer,—that such transfer is sought to be set aside. These facts are all undisputed, with nothing secret about the conveyance, which was made under conditions which showed that it was not intended to conceal it when made, and when there was no rent due the plaintiffs, and no lease then in existence upon which the defendant could at any time be liable.

To say that the execution of an instrument under those circumstances was fraudulent would make every conveyance fraudulent made after a man had signed a guaranty which was to continue for several years. If any legal proposition is settled, it is that a person has a right to give away his property as he pleases, and that such a gift is not invalid because he subsequently becomes insolvent and unable to pay his debts. As was said by Judge Earl in Kain v. Larkin, 131 N. Y. 307, 30 N. E. 105:

"By the express terms of the statute, it is not sufficient to condemn a conveyance of land as a fraud upon creditors that it was not founded on a

valuable consideration. A person assailing such a conveyance must go further, and show by other evidence that it was made with the fraudulent intent condemned in the statute. An owner of real estate can make a voluntary settlement thereof upon his wife and children without any consideration, provided he has ample property left to satisfy all the just claims of his creditors. If the grantor remains solvent after the conveyance, and has sufficient property left to satisfy all his just debts, then the conveyance, whatever his intention was, cannot be a fraud upon his existing creditors; and when a judgment creditor assails a conveyance made by the judgment debtor he cannot cast upon the grantee the onus of showing good faith, and of establishing that the grantor was solvent after the conveyance, by simply showing that the deed was not founded upon a valuable consideration. But the person assailing the deed assumes the burden of showing that it was executed in bad faith, and that it left the grantor insolvent, and without ample property to pay his existing debts and liabilities, and so it has been repeatedly held."

This opinion but reiterates a rule that has always been the law, as shown by the authorities cited. If this is the law, then, upon the facts stated, there is no justification for a finding that this conveyance defrauded the plaintiffs, or any one, or was made with such an intent; and the burden· of proof being upon the plaintiffs to show the fraudulent intent, and there being no evidence to show such intent, the finding of the trial judge of such an intent is unsupported by the evidence.

There are several rulings upon questions of evidence which it is not necessary for us to consider upon this appeal, as a new trial must be ordered. It is proper, however, to call attention to the fact that the declarations of Luke Higgins, the grantor, made after the conveyance, are not evidence as against Elizabeth Higgins, the grantee, to show fraud in the transaction; nor would the fact that one of the defendants was called as a witness and testified to facts which are inconsistent with a fraudulent intent, and that the court refused to believe his testimony, be evidence from which the court could find a fraudulent intent.

We think the evidence in this case was entirely insufficient to justify a finding of any fraudulent intent as to either of the parties to the conveyances, and for that reason the judgment should be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.